IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ELVIRA GARCIA,

    Plaintiff,

    v.                            CIVIL NO.: WDQ-11-0045

THE HARTFORD,

    Defendant.

* * * * * * * * * * * * *

MEMORANDUM OPINION

Elvira Garcia ("Mrs. Garcia"), surviving spouse of Jose Jaime Garcia ("Mr. Garcia"), sued The Hartford for violating the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. For the following reasons, Hartford's motion for summary judgment will be granted, and Mrs. Garcia's cross-motion for summary judgment will be denied.[1]

I.   Background[2]

Mr. Garcia was a Director of Dining Services for American Baptist Homes of the West. ECF No. 28 at 759. [hereinafter "Admin. Rec."] (under seal). Mr. Garcia participated in his employer's group long-term disability plan ("the plan"),

---

[1] As no hearing is necessary, Mrs. Garcia's request for a hearing, ECF No. 27, will be denied.

[2] On cross-motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003).

governed by ERISA. *Id.* 21. Hartford insured and administered the plan. ECF No. 25 Attach. 2 at 9.

The plan's objective is to "provide [policyholders] with loss of income protection if [they] become disabled." Admin. Rec. 5. Under the plan, covered employees receive Long Term Disability ("LTD") benefits: monthly payments when they are disabled and unable to perform their jobs. Admin. Rec. 7. Payments end when a covered employee is able to return to work or dies. *Id.* 8. A covered employee who is disabled and completely unable to work receives a portion of his monthly income (or the maximum benefit if the benefit portion exceeds the maximum), less "Other Income Benefits."[3] *Id.*

---

[3] The plan defines "Other Income Benefits" as:

> the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, or to a third party on your behalf, pursuant to any:
> 1. temporary or permanent disability benefits under a Workers' Compensation Law, occupational disease law, or similar law, governmental law or program that provides disability or
> 2. unemployment benefits as a result of your job with the Employer;
> 3. plan or arrangement of coverage, whether insured or not, or as a result of employment by or association with the Employer or as a result of membership in or association with any group, association, union or other organization;
> 4. "no-fault" automobile insurance plan; or

2

Hartford had "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of" the plan. *Id.* 15.

On August 16, 2004, Mr. Garcia had a heart attack. Admin. Rec. 709. On December 13, 2004, Hartford approved his claim for

---

    5. disability benefits under the United States Social Security Act, the Railroad Retirement Act, the Canada Pension Plan, the Quebec Pension Plan, or similar plan or act that, your spouse and children are eligible to receive because of your Disability.
Other Income Benefits also mean any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:
1. disability benefit under the Employer's Retirement Plan;
2. portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;
3. retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
   a) you were receiving it prior to becoming Disabled; or
   b) you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.
Other Income Benefits will not include the portion, if any, of such retirement benefit that was funded by your after-tax contributions; or
4. retirement benefits under the United States Social Security Act, the Railroad Retirement Act, the Canada Pension Plan, the Quebec Pension Plan, or similar plan or act that you, your spouse and dependent children receive because of your retirement, unless you were receiving them prior to becoming Disabled.

Admin. Rec. 17-18.

LTD benefits.[4]  *Id.* 741.  In the approval letter, Hartford told Mr. Garcia that his benefits would be "reduced by certain 'Other Income Benefits' you receive . . . such as Social Security."  It referred Mr. Garcia to his employer plan policy booklet "for full details."  *Id.*  At the time, Mr. Garcia was not receiving Social Security Disability ("SSD") benefits; Hartford directed him to apply for benefits for himself and any eligible dependents.  *Id.* 742-43.

On January 3, 2005, Mr. Garcia signed an "LTD Payment Options and Reimbursement Agreement" with Hartford.  *Id.* 672. In the agreement, Hartford stated that it "under[stood] that [Mr. Garcia] applied for . . . Other Income Benefits."  *Id.*  Mr. Garcia stated that "Other Income Benefits means Primary Social Security Disability and Dependent Social Security Disability." *Id.*  He asked Hartford not to reduce his LTD benefits until he received his SSD benefits.  Mr. Garcia agreed that if Hartford paid him "[LTD] benefits greater than those which should have been paid as a result of [his decision, he would] be required to provide a lump sum repayment to The Hartford."  *Id.*  Hartford reserved the right to "reduce or eliminate future [LTD] benefit payments in order to recover any overpayment balance that is not reimbursed."  *Id.*

---

[4] It is undisputed that Mr. Garcia was disabled and eligible to receive LTD benefits at all relevant times.  *See* ECF No. 25 Attach. 2 at 4-7.

On February 8, 2005, Mr. Garcia was approved for primary SSD benefits. *Id.* 684. The Social Security Administration agreed to pay him $1,879 per month starting in February. He began receiving the payments at the end of the following month. *Id.* On May 25, 2005, Mr. Garcia notified Hartford of the SSD benefits, stating that he would "likely" receive about $1,870[5] per month. *Id.* 686.[6]

On July 30, 2005, Hartford told Mr. Garcia that in August 2005, it would begin deducting $1,870 from his LTD benefits based on Mr. Garcia's estimate of the benefits, and in September 2005, pursuant to the repayment agreement, it would also deduct funds to account for SSD benefits Mr. Garcia received before August 2005. *Id.* 686. Hartford noted that Mr. Garcia's daughter was eligible to receive dependent SSD benefits, and it would reduce his LTD benefits to reflect the benefits it estimated she could receive from SSD. *Id.*[7]

---

[5] It is not clear why Mr. Garcia did not provide Hartford with the exact amount.

[6] Between June and October, 2005, Hartford sent Mr. Garcia several letters requesting a copy of the SSD Notice of Award in order to reduce his LTD benefits by the amount of the SSD award. Admin. Rec. 674, 676, 686.

[7] On September 11, 2005, Hartford estimated that Mr. Garcia's daughter was receiving $939 monthly in dependent SSD benefits, and it began deducting that amount from his monthly LTD benefits. Admin. Rec. 676. After the SSD adjustments, Mr. Garcia's monthly LTD payment was $793.11. *Id.*

On September 11, 2005, Hartford notified Mr. Garcia that, because he had received SSD benefits before Hartford began reducing his LTD benefits, Hartford had paid him $17,640.42 more than he was entitled to under the plan and repayment agreement. *Id.* 676. Hartford began withholding Mr. Garcia's remaining benefits, and told Mr. Garcia it would continue to do so until he satisfied the overpayment by paying it in a lump sum or through the withheld benefits. *Id.* On September 28, 2005, Hartford sent a similar letter. *Id.* 674.

On October 21, 2005, Mr. Garcia[8] appealed the reduction and withholding of his LTD benefits, arguing that he had not been properly notified of a denial of benefits, and individual and dependent SSD benefits should not have been deducted from his LTD benefits. *Id.* 657-59. The appeal was assigned to Appeal Specialist Dave Cohen. *Id.* 656.

On November 11, 2005, Cohen affirmed Hartford's decision, concluding that "the calculation of the overpayment to [Garcia's] claim [was] correct" because "[t]he Social Security benefits paid to Mr. Garcia constitute Other Income Benefits under the policy and are, therefore, an offset to his LTD benefits." *Id.* 649-51.

---

[8] Through his attorney, David Albright, Esquire. Admin. Rec. 657.

On November 3, 2006, Hartford acknowledged that Mr. Garcia had provided documentation of his SSD primary and dependent benefits. *Id.* 569. Hartford adjusted his benefits calculations and noted that it "continue[d] to deduct Mr. Garcia's Monthly Benefit toward the overpayment balance" of $3,074.72. *Id.*

On January 19, 2007, Mr. Garcia died. *Id.* 538.[9]

On December 10, 2007, Mrs. Garcia[10] asked Hartford to reconsider its decision to offset Mr. Garcia's LTD payments. *Id.* 494.[11] On January 7, 2008, Hartford allowed Mrs. Garcia to submit a second appeal of Hartford's decision. *Id.* On June 25, 2008, she submitted the appeal. *Id.* 433.[12]

---

[9] Mr. Garcia also participated in group term life insurance through Hartford. *Id.* 503. After he died, Mrs. Garcia, through Albright, appealed the benefit award of $65,000. The reviewer found that Mrs. Garcia was entitled to $326,000, which Hartford paid. *Id.*

[10] Through Albright. Admin. Rec. 494.

[11] Mrs. Garcia argued that "the policy states . . . that the only offsets are Dependent [SSD] income paid to [Mr. Garcia's] spouse or his dependents, and not to Mr. Garcia, himself." Admin. Rec. 494. She cited the definition of other income benefits on pages 16 and 17 of the plan. *Id.* 495. She conceded that the deduction of her daughter's dependent SSD benefits was proper. *Id.*

[12] She restated the issues raised in the December 10, 2007 letter. Admin. Rec. 433-35. She added that "[t]he Hartford initially for many months actually paid the benefits as we are arguing; and therefore has made an admission against interest by paying Mr. Garcia and his family the full benefit for many months." *Id.* 433.

On August 15, 2008, Appeal Specialist Judy Rose determined that "the Policy was administered correctly . . . and, as such, the addition of the Primary and Dependent [SSD] offsets effective February 2005, and the resulting overpayment[,] is correct." Id. 423. In reaching her decision, Rose considered (1) the policy,[13] (2) Mr. Garcia's policy approval letter, (3) the LTD reimbursement agreement, and (4) Albright's letters to Hartford on behalf of the Garcias. Id. 423-27.

Including the full definition of other income benefits in the appeal decision, Rose stated that

> While [Albright] . . . interpreted the Policy language to exclude Mr. Garcia's Primary Social Security Disability benefits from the Policy's Other Income Benefits, the Policy provision in question indicates that Other Income Benefits are benefits provided to a claimant for loss of income, as well as to the claimant's family, when applicable, as a result of the claimant's period of Disability. The Policy further indicates that Other Income Benefits includes those listed in this provision. As Mr. Garcia's Primary Social Security Disability benefits were clearly benefits provided to him for loss of income, they are considered Other Income Benefits in the plain and unambiguous language of the Policy.

Id. 427.[14]

---

[13] She considered: (1) the clause granting Hartford "full discretion . . . to construe and interpret all terms and provisions of" the plan; (2) the calculation of benefits; and (3) the definition of other income benefits, "beginning on page 16, and continuing onto page 17" of the plan booklet. Admin. Rec. 423-25.

[14] Rose also stated that "Mr. Garcia was aware that an overpayment would occur [when he requested full LTD benefits

On January 6, 2011, Mrs. Garcia sued Hartford for the LTD benefits offset for Mr. Garcia's individual and dependent SSD benefits, and attorney's fees. ECF No. 1 ¶8. On February 9, 2011, Hartford answered the complaint. ECF No. 6. On July 25, 2011, Hartford moved for summary judgment. ECF No. 25. On August 15, 2011, Mrs. Garcia filed an opposition to Hartford's motion and cross-motion for summary judgment. ECF No. 26. The next day, she requested a hearing on her cross-motion. ECF No. 27. On August 29, 2011, Hartford opposed Mrs. Garcia's cross-motion for summary judgment and replied to her opposition to its summary judgment motion. ECF No. 29. On September 12, 2011, Mrs. Garcia replied to the response. ECF No. 30.

II. Analysis

   A.   Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[15] In considering the

---

until he received his SSD benefits], but failed to provide [Hartford] with accurate information," which resulted in the payment of unadjusted LTD benefits that Albright contended was an "admission" that Hartford should not have reduced his benefits. Admin. Rec. 427.

[15] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall'

motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

---

. . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

B.   Hartford's Motion for Summary Judgment

Hartford contends that it did not abuse its discretion in determining that Mr. Garcia's individual and dependent SSD benefits were other income benefits that should offset his LTD benefits.  ECF No. 25 Attach. 2 at 1.

When, as here, it is undisputed that an ERISA plan vests discretion in the plan administrator to construe the terms of the plan, the administrator's determination is reviewed for abuse of discretion.[16]  *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long Term Disability Plan*, 509 F.3d 644, 649 (4th Cir. 2007). The review is "limited to the body of evidence before the administrator at the time it rejected [the] claim," *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 294 (4th Cir. 2006),[17] and the "administrator's decision will not be disturbed if it is the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999)(internal quotation marks omitted).  This is the case though the Court "would have come to

---

[16]  The plan states: "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  Admin. Rec. at 16.

[17]  *See also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993) (addressing evidence considered under *de novo* review).

a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

"Substantial evidence is the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient to support a particular conclusion." *Donnell*, 165 F. App'x at 295 (internal quotation marks omitted). The Court will not "re-weigh[] the evidence for itself," and when the evidence is close, it will "stay[] its hand." *Evans*, 514 F.3d at 325.

The Fourth Circuit has identified eight non-exclusive factors to consider when determining whether the administrator has abused its discretion. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). They are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered . . . and the degree to which they support [the decision]; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* The administrator's conflict of interest--as when the administrator is also the insurer--is "one factor among many" the Court weighs in determining the reasonableness of the

decision and is not determinative. *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260-61 (4th Cir. 2009). "[W]henever a plan administrator employs its interpretive discretion to construe an ambiguous provision in favor of its financial interest, that fact may be considered as a factor weighing against the reasonableness of its decision." *Id.* at 261.

1. Language of the Plan and Consistency of Interpretation

"[T]he plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998). There is no dispute that under the plan, benefits are reduced by "Other Income Benefits." Admin. Rec. 9. The plan defines other income benefits as

> the amount of *any* benefit for loss of income, provided to *you* or your family, as a result of the period of Disability for which you are claiming benefits under this plan

*Id.* 17 (emphasis added). The plan notes that the definition

> *includes* any such benefits . . . that are paid to *you* . . . pursuant to any: . . . disability benefits under the United States Social Security Act . . . that, your spouse and children are eligible to receive because of your Disability

*Id.* (emphasis added). The plan administrator could reasonably interpret this provision as merely a non-exhaustive list of examples of other income benefits. The plan does not state that the list is exhaustive, and immediately after the specified

13

benefits, the plan states that other income benefits "*also* mean any payments . . . pursuant to" another group of exemplary benefits. *Id.* 18 (emphasis added). Accordingly, the list of included benefits is not exhaustive.

The plan also lists payments that are not other income benefits, such as "the portion . . . of [an employer contribution] retirement plan that was funded by [the claimant's] after-tax contributions." *Id.* Listing those exclusions would be unnecessary if the list of benefits were exhaustive. *See Carden*, 559 F.3d at 261.

Hartford's interpretation of the list of other income benefits as exemplary, not exhaustive, is consistent with other provisions in the plan. It is clearly consistent with the general definition of other income benefits as "*any* benefit for loss of income, provided to you . . . as a result of the period of Disability for which you are claiming benefits." Admin. Rec. 16 (emphasis added). It is also consistent with the reduction in benefits based on Social Security retirement benefits "that you, your spouse and dependent children receive . . . unless you were receiving them prior to becoming disabled." *Id.* 17. Both reductions consider the extent to which the Social Security payment acts as a substitute for employer-paid income, because the plan does not consider retirement benefits initiated before the disability as "other income benefits." *Id.*

Accordingly, the plain language of the plan permits Hartford to offset LTD benefits for individual and dependent SSD benefits.

2. Plan Objective

The plan's objective is to "provide [policyholders] with loss of income protection if [they] become disabled." Admin. Rec. 5. That goal is consistent with reducing LTD benefits to account for other benefits the claimant receives that also replace his lost income.[18] See Carden, 559 F.3d at 262-63.

3. Adequacy of the Materials Considered and Principles of Decisionmaking Process

Hartford considered the plan's language, the benefits Mr. Garcia received, and Albright's arguments, and reasoned that under the broad defining language, Mr. Garcia's SSD benefits were other income benefits. Admin. Rec. 423-27. As discussed above, the plan's language supports Hartford's conclusion. No other materials were necessary for the determination of the

---

[18] Mrs. Garcia contends that the plan's purpose was "to provide money to the participants who have a long term disability." ECF No. 26 at 8. However, as the plan states, the goal is to "protect[]" policyholders against "loss of income"--a more narrow objective than "provid[ing] money" to policyholders, because the plan's goal implies that it is limited to provision of funds to substitute for, rather than supplement, income. See Admin. Rec. 5; Carden, 559 F.3d at 262-63 (Administrator's decision to offset income from worker's compensation benefits was "consistent with the plan's design, which is to assure an *income* stream for the disabled employee during the period of disability rather than an independent benefit.").

issue. Hartford considered adequate materials that supported its decision.

Hartford applied reasonable principles of interpretation in reaching its decision: it analyzed the plan according to the plain meaning of the broadest definition of "Other Income Benefits" and interpreted "includes" to be *illustrative* rather than *exhaustive*.

4.   Consistency with ERISA Requirements

ERISA requires a plan administrator to "discharge his duties . . . solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Offsetting LTD benefits to account for other benefits the claimant receives is consistent with that requirement. *See Carden*, 559 F.3d at 260-63.[19]

5.   Conflict of Interest

Hartford concedes that it had a structural conflict of interest because it was the administrator and insurer of the plan. ECF No. 25 Attach. 2 at 9. However, that conflict

---

[19] Upholding plan administrator's decision to offset LTD benefits for unemployment compensation. *Carden*, 559 F.3d 262-63; *see also Grooman v. Nw. Mut. Life Ins. Co.*, 200 F. Supp. 2d 523, 529 (D. Md. 2002) (awarding plan administrator overpayment balance accrued when claimant failed to deduct his SSD benefits from LTD benefits); *Linck v. Arrow Elecs., Inc.*, No. 07-3078, 2009 WL 2408411 at *7 (D. Md. Aug. 3, 2009) (same); *Keith v. Fed. Express Corp. Long Term Disability Plan*, No. 09-0389, 2010 WL 3521723, at *1, 4 (W.D. Va. Sep. 7, 2010) (same).

"should not have a significant role in the analysis" because Hartford's finding of disability, payment of the benefits for several years, and willingness to permit a second appeal of the decision to a new appeal specialist, indicate that Hartford was not "inherently biased in making its decision."[20] *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 632 (4th Cir. 2010).

Accordingly, the first through sixth factors favor Hartford's decision, and the final factor does not outweigh those factors. Hartford did not abuse its discretion by offsetting Mr. Garcia's LTD benefits.

There is no dispute of material fact, and Hartford is entitled to judgment as a matter of law.

C.   Mrs. Garcia's Cross-Motion for Summary Judgment

Summary judgment in Mrs. Garcia's favor is only appropriate if the evidence of her entitlement to the funds is so overwhelming that she is entitled to judgment as a matter of law. *Hardt*, 540 F. Supp. 2d at 664. Mrs. Garcia contends that she is entitled to summary judgment because the LTD "policy clearly states that the Hartford does not offset Mr. Garcia's monthly LTD benefit by his Social Security disability benefits," and analysis of the other *Booth* factors shows that Hartford abused its discretion. ECF No. 26 at 1, 4-9.

---

[20] That Hartford initially reduced Mr. Garcia's life insurance benefits does not establish Hartford's bias, as Hartford eventually provided the full benefit. Admin. Rec. 503.

17

Viewed in the light most favorable to Hartford, the facts do not demonstrate that Mrs. Garcia is entitled to judgment as a matter of law. *See Hardt,* 540 F. Supp. 2d at 664; *Dennis,* 290 F.3d at 645. Hartford's interpretation of the list of other income benefits as exemplary, rather than exhaustive, is reasonable and consistent with other provisions in the plan and the plan's objective. *See Carden,* 559 F.3d at 261-63; Admin. Rec. 16-18. Hartford considered the relevant material--the policy--and applied reasonable principles of interpretation to reach its conclusion that the list of other income benefits was illustrative rather than exhaustive. Offsetting LTD benefits to account for other benefits the claimant receives is consistent with ERISA's requirement that the administrator discharge its duties in the interests of the participants. *See Carden,* 559 F.3d at 260-63. Accordingly, the first six factors support Hartford.

Hartford's conflict of interest does not outweigh the other *Booth* factors. *See Williams,* 609 F.3d at 632. Mrs. Garcia has not shown that she is entitled to judgment as a matter of law. Her motion will be denied.

III. Conclusion

For the reasons stated above, Hartford's motion for summary judgment will be granted. Mrs. Garcia's cross-motion for summary judgment will be denied.

_1/31/12_____                    _____/s/_____
Date                                     William D. Quarles, Jr.
                                         United States District Judge